(No. 73-291—

DR. GUILIO BRUNI, Claimant, *vs.* STATE OF ILLINOIS, DEPARTMENT OF PUBLIC AID, Respondent.

*Opinion filed April 25, 1977.*

SPIVACK, J.

Claimant seeks to recover the sum of $61,158.00 for medical services rendered to some 2,500 Public Aid recipients from December, 1970, to January, 1972. Respondent has counterclaimed in the sum of $10,202.50, allegedly paid Claimant in error for services rendered

other patients within the same period. Respondent defends principally on the grounds that in March, 1965, Claimant was suspended from the roster of physicians approved to participate in the Public Aid program. Respondent likewise albeit less vigorously defends on the grounds that the Illinois Department of Registration and Education had revoked Claimant's license to practice medicine in the State of Illinois.

Hearings were conducted before Commissioner Griffin on June 14 and July 16, 1974. The testimony introduced was that of Claimant, Thelma Trice, and J. M. Kilbreth, employees of the Department of Public Aid. Additionally, various documents were received in evidence and are part of the record.

The following facts were established by Commissioner Griffin and duly reported to the Court:

Claimant was licensed by the State of Illinois as a physician in 1953. In 1960, he applied and was accepted as a physician eligible to participate in the Public Aid program. In 1965, he was convicted of a non-medical related felony, was incarcerated in a Federal penal institution, and paroled in 1969. In 1970, he recommenced his medical practice, treated Public Aid patients, and in fact received the sum of $10,202.50 for services rendered some of these patients during the first three months of the period in question.

In the early part of 1970, the Illinois Department of Registration and Education revoked Claimant's medical license on the grounds of his prior conviction of a felony. This revocation was reversed by the Circuit Court of Cook County in May, 1970. An appeal was taken and the Appellate Court reversed the trial court in 1972. Subsequently, the Illinois Supreme Court affirmed the Appellate Court's decision, and an appeal of that ruling

is presently pending before the United States Supreme Court.

In March of 1965, Claimant was suspended from participation in the medical aid program, following a series of departmental proceedings. It is clear that Claimant was not notified of these proceedings, had no knowledge of their pendency, and never received notice that he had been suspended from participation in the program.

The evidence further disclosed that there is no question raised as to Claimant's competency in or about the treatment of his patients or the legitimacy or accuracy of the bills rendered. It is likewise clear however, that the custom followed by the Department and accepted by the Claimant was that most bills were reduced by about one third inasmuch as Claimant's customary charges were higher than the maximum prescribed by the Department.

It is evident that there was an express contract entered into between the Claimant and the Department of Public Aid in 1960, and although the contract is terminable at will by either party with or without cause, in order for any such termination to become effective, justice and reason require that actual notice thereof be given to the party adversely affected by such unilateral termination. This did not occur in the instant case. Moreover, the existence of the contract as late as 1970, some five years after the attempted unilateral termination, was affirmed by the Department of Public Aid by its payment of some $10,000.00 to Claimant. In view of our conclusion that the contract was in full force and effect during the period when Claimant performed the services for which he seeks compensation, it is not necessary to consider the legal issues raised by the

pleadings and arguments concerning estoppel, quantum meruit, privity, and the like.

The only question remaining is whether or not the Claimant was validly licensed as a physician during the period of time that he rendered the services for which he now seeks recompense. We find that he was so licensed until at least 1972, inasmuch as the Circuit Court of Cook County did by its order of May, 1970, declare Claimant to be licensed and such order remained in full force and effect until reversed by the Illinois Appellate Court in 1972.

Having thus determined that Claimant performed the services pursuant to a valid contract with the Department of Public Aid during a period when he was properly licensed to render such services, it remains to determine the fair amount due him.

The aggregate of the billings herein claimed is $61,158.00. However, the evidence discloses that customarily prior billings of Claimant were reduced by one third to reflect the difference between Claimant's customary charges and the maximums prescribed by Public Aid. Claimant made no objections to these reductions and thus had agreed to this contractual modification. Applying the same standards to the amounts now due, the Court finds that the total amount now due Claimant is $40,000.00. Accordingly, Claimant, Dr. Guilio Bruni, is therefore awarded the sum of Forty Thousand Dollars ($40,000.00).